UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA S., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI,[1] *Acting Commissioner of Social Security*, <br><br> Defendant. | Case No.: 21cv1248-AJB-MDD <br><br> **REPORT AND RECOMMENDATION RESOLVING JOINT MOTION FOR JUDICIAL REVIEW AND AFFIRMING THE COMMISSIONER'S FINAL DECISION** <br><br> [ECF No. 17] |

Sandra S. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's application for supplemental security income benefits. (ECF No. 1). The ALJ found that Plaintiff has not been disabled since March 11, 2015, the date the

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021 and is therefore substituted for Andrew M. Saul as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

21cv1248-AJB-MDD

application was filed. (AR at 25).[2] On July 11, 2022, the parties filed a Joint Motion for Judicial Review of the ALJ's decision. (ECF No. 17).

For the reasons expressed herein, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in April 1963. (AR at 37). Accordingly, Plaintiff was categorized by the ALJ as an individual closely approaching advanced age. (*Id.*).

Plaintiff protectively filed an application for supplemental security income on March 11, 2015. (AR at 25). Plaintiff alleges a disability beginning on March 1, 2014. (*Id.*). After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*). An administrative hearing was held on September 15, 2017. (AR at 49-83). Plaintiff appeared and was represented by attorney Susan Fox at the hearing. (AR at 51). Testimony was taken from Plaintiff and David Dettmer, an impartial vocational expert ("VE"). (*See* AR at 49-83). On January 11, 2018, the ALJ issued a decision denying Plaintiff's claims.[3] (AR at 22-39).

On January 11, 2018, Plaintiff sought review with the Appeals Council. (AR at 16). On November 28, 2018, the Appeals Council denied her request for review and declared the ALJ's decision to be the final decision of the Commissioner of Social Security. (AR at 16-20). Plaintiff filed this action on

---

[2] "AR" refers to the Certified Administrative Record filed on November 30, 2021. (ECF No. 7).

[3] As the ALJ's decision explains, Plaintiff previously filed a Title XVI application in 2009. Her prior claims were denied, and the ALJ found no basis to reopen the prior application. (AR at 25).

July 9, 2021, pursuant to the Appeals Council's extension of her deadline to file a civil action.  (ECF No. 1; AR at 1).

## II.   DISCUSSION

### A.   Legal Standard

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  *Id.*; *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Courts look "to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.*  "[T]he threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme Court] has said, is 'more than a mere scintilla.'  It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*  The Ninth Circuit explains that substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds*.

An ALJ's decision is reversed only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Id.*  "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing

the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul,* 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001)). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." *Mayes,* 276 F.3d at 459.

Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

### B. Summary of the ALJ's Findings

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 11, 2015. (AR at 27).

At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the spine status post trauma; right shoulder impingement with trapezius muscle strain, tendonitis, and fraying; and depressive disorder with anxiety." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR at 29-31).

Next, after considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [E]xcept the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can sit for 6 hours in an 8-hour workday with normal breaks; she can stand and/or walk for 6 hours in an 8-hour workday with normal breaks; she is unlimited in pushing and pulling other than as stated for lifting and carrying; she is unlimited in climbing ramps and stairs, balancing, stooping, and kneeling; she can occasionally climb ladders, scaffolds, and ropes; she can frequently crawl; she can occasionally perform overhead reaching with the right upper extremity; she can carry out unskilled tasks at all appropriate reasoning levels per the Dictionary of Occupational Titles and can perform these tasks at an adequate pace for an 8-hour workday with normal breaks; she can occasionally interact with co-workers and supervisors, but can have no contact with the general public; she can tolerate only occasional changes in a work setting; she cannot do head turning side-to-side or up-and-down more than 30 degrees from neutral without having to adjust her body movements by turning her torso; and she can only do occasional forceful gripping with her right hand.

(AR at 31).

The ALJ said that his RFC assessment was based on all the evidence and the extent to which Plaintiff's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (*Id.*). The ALJ also stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927. (*Id.*).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a Groundskeeper. (AR at 37). Because Plaintiff's past relevant work was unskilled, he explained that transferability of job skills was not an issue in the case. (*Id.*).

For the purposes of his step five determination, the ALJ accepted the testimony of the VE. (AR at 38). The VE identified the jobs of Office Helper

(DOT No. 239.567-060); Mail Clerk (DOT No. 209.687-026); and Machine Operator (DOT No. 207.685-014) as jobs Plaintiff could perform and which exist in significant numbers in the national economy.  (*Id.*).  The ALJ therefore found that Plaintiff was not disabled.  (AR at 38-39).

### C.    Issues in Dispute

The issues in dispute are: (1) whether the ALJ erred by failing to consider whether to use an older age category in a borderline situation; and (2) whether the ALJ erred by ignoring mental limitations contained in the consultative psychiatric evaluation, to which he afforded great weight.  (*See* ECF No. 17 at 15).

### 1.    Consideration of Whether to Use an Older Age Category in a Borderline Situation

Plaintiff argues the ALJ failed to consider the borderline age situation because he did not (i) mention Plaintiff's age on the date of his decision, (ii) cite to the relevant subsection of 20 C.F.R. § 404.1563, or (iii) discuss borderline age hypotheticals with the vocational expert.  (ECF No. 17 at 17). The Commissioner argues the hearing transcript and the ALJ's decision reflect that the ALJ considered Plaintiff's borderline age situation.  (*Id.* at 23).

A borderline age situation occurs when a claimant is within a few days or a few months of reaching an older age category.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  "Although an ALJ is required by regulation to *consider* whether to use an older age category in a borderline situation, there is no requirement that the ALJ explain in her written decision why she did not use an older age category."  *Id.* at 1070 (citing 20 C.F.R. § 404.1563(b)).

In *Lockwood*, the court determined that the ALJ satisfied the regulation and did not "apply the age categories mechanically" where she cited to § 404.1563, mentioned the plaintiff's date of birth and age of 54 on the date of the decision, and "'evaluat[ed] the overall impact of all the factors of [the plaintiff's] case' when the ALJ relied on the testimony of a vocational expert before she found [the plaintiff] was not disabled." (*Id.*) (citing 20 C.F.R. § 404.1563(b)). The *Lockwood* court expressed that the ALJ's decision showed knowledge of her discretion to use the older age category under 20 C.F.R. § 404.1563(b). (*Id.* at 1072 n.3) (noting that it is presumed "that ALJs know the law and apply it in making their decisions."). The Ninth Circuit found that the "ALJ did not err when she did not address in her written decision the fact that [plaintiff] was just over one month from being a person of advanced age." *Id.* at 1070 (noting that the ALJ was clearly aware that plaintiff was just shy of her 55th birthday).

Plaintiff tries to distinguish *Lockwood* by arguing that the ALJ here failed to reference Plaintiff's age on the date of the ALJ's decision. (ECF No. 17 at 17). This distinction is unavailing because the ALJ's decision states that Plaintiff "is a 54 year-old woman." (AR at 32). The Commissioner also appears to have overlooked the ALJ's acknowledgment of Plaintiff's age on the decision date. (*See* ECF No. 17 at 23-24).

At the hearing in Plaintiff's case, the ALJ said, "I was thinking about the fact that she's about to hit 55 --" "And when she hits 55, she's got a pretty strong case . . ." (AR at 52-53). Accordingly, the ALJ was aware of the implications of Plaintiff turning 55. He explained to Plaintiff, "Under our rules, that 55th birthday is kind of a magical point in a case like yours." (AR at 81). "[Y]ou would win under what we call a grid rule at that point." (*Id.*). At the hearing, the ALJ also stated, "Counsel, you didn't mention it, but I will

of course, consider the possibility of a . . . . non-mechanical application of the rules, but I think we're actually too far out." (AR at 80-81). On the decision date, Plaintiff was just over three months short of age 55. The ALJ's decision included her date of birth. (AR at 37). The ALJ also referenced the regulations regarding age as a vocational factor. (*Id.*).

Though Plaintiff argues that the regulations were not necessarily cited to address the borderline age issue, Plaintiff provides no authority that this ambiguity amounts to error when the ALJ discussed the borderline age issue at the hearing and noted Plaintiff's age on the date of the decision. After all, "there is no requirement that the ALJ explain in her written decision why she did not use an older age category." *See Lockwood*, at 1070.

Lastly, Plaintiff argues the lack of discussion of borderline age in the vocational expert testimony supports that the ALJ did not consider the borderline age situation. (ECF No. 17 at 19). As the cases cited by Plaintiff acknowledge, "*Lockwood* is not explicit as to the issue of how the ALJ's reliance on the VE's testimony in that case showed that the ALJ considered the borderline age issue." *Durkee v. Astrue*, No. CV 11-6564-PLA, 2012 U.S. Dist. LEXIS 108398, at *25 (C.D. Cal. Aug. 2, 2012); *Parks v. Colvin*, No. CV 15-00623-RAO, 2015 U.S. Dist. LEXIS 167806, at *9 (C.D. Cal. Dec. 14, 2015); *Janice B. R. v. Saul*, No. 2:18-cv-06039-AFM, 2019 U.S. Dist. LEXIS 148782, at *10 (C.D. Cal. Aug. 29, 2019). Moreover, these cases can be distinguished because in each, the ALJ failed to mention the plaintiff's age on the date of the ALJ's decision.

Here, the ALJ noted Plaintiff's age of 54 on the date of his decision and stated at the hearing that he would consider a non-mechanical application of the age categories. (AR at 32, 80-81). Accordingly, the Court finds that substantial evidence supports that the ALJ considered whether to use the

older age category, and therefore did not err.

### 2. Mental Limitations from Dr. Clark's Evaluation

Plaintiff argues that the ALJ erred by failing to incorporate in Plaintiff's RFC all the limitations expressed in the psychiatric consultative examiner's opinion. (ECF No. 17 at 28). In relevant part, Dr. Clark opined that Plaintiff 1) has moderate limitations in her ability to concentrate for at least two-hour increments at a time, to maintain a regular work schedule; and 2) has moderate limitations in her ability to sustain an ordinary routine without sustained supervision, and "would have difficulty attending work every day." (AR at 351). With respect to Plaintiff's nonexertional RFC, the ALJ determined that Plaintiff:

> "[C]an carry out unskilled tasks at all appropriate reasoning levels per the Dictionary of Occupational Titles and can perform these tasks at an adequate pace for an 8-hour workday with normal breaks; she can occasionally interact with co-workers and supervisors, but can have no contact with the general public; she can tolerate only occasional changes in a work setting[.]"

(AR at 31).

Plaintiff argues that the RFC restricting Plaintiff to unskilled tasks did not account for the limitations Dr. Clark expressed in her opinion and contends that the ALJ was required to either include limitations regarding concentration and sustaining a routine/attending work in the RFC or specifically explain why he rejected these limitations. (ECF No. 17 at 30).

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir.1989) (citing 20 C.F.R. § 404.1545). The ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State agency physicians and medical experts in order to determine a claimant's RFC. *See*

20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* 20 C.F.R. §§ 404.1513(c), 416.913(c).

"[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). ALJs "must explain why significant, probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (internal quotation marks and citation omitted). "[T]he Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. . . . [T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons . . . ." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

"However, the RFC need not quote each and every finding, so long as the RFC captures the limitations in the medical opinion." *Shawn P. v. Kijakazi*, No. 20cv1054-MSB, 2021 U.S. Dist. LEXIS 187160, at *7-8 (S.D. Cal. Sep. 28, 2021); *see also*, *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (explaining that the ALJ is responsible for translating and incorporating medical findings into a succinct RFC). For example, "the ALJ may translate a claimant's moderate limitation in concentration, persistence or pace into unskilled work if there is a medical opinion to support her ability to perform unskilled work." *Kramer v. Kijakazi*, No. 20cv2065-GPC(AHG), 2022 U.S. Dist. LEXIS 53738, at *40-41 (S.D. Cal. Mar. 24, 2022) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

As Plaintiff acknowledges, the ALJ's decision did not expressly reject or discount any portion of Dr. Clark's opinion. In fact, the ALJ gave "great weight" to Dr. Clark's psychiatric evaluation, noting that Dr. Clark opined

that Plaintiff had a "moderate limitation interacting with others; moderate limitation sustaining an ordinary routine without sustained supervision; and moderate limitation concentrating for two-hour increments at a time." (AR at 35). The ALJ explains that his RFC finding incorporates Dr. Clark's opinion as well as the opinions of both State agency psychological consultants. (*Id.* at 36). The ALJ also gave "great weight" to the State agency psychological consultants' opinions that Plaintiff had a "mild limitation with activities of daily living; moderate limitation with social functioning; moderate limitation with concentration, persistence, or pace, and could perform only simple tasks with limited public contact." (*Id.*). The ALJ stated that these opinions were "reasonably consistent with the examination and opinion of the consultative examiner." (*Id.*).

Accordingly, the threshold issue is whether the ALJ implicitly rejected the moderate limitations opined by Dr. Clark regarding Plaintiff's ability to "concentrate for at least two-hour increments at a time, in order to maintain a regular work schedule" and her ability to "sustain an ordinary routine without sustained supervision," specifically, her "difficulty attending work every day." If the Court finds these limitations were not rejected, then no further reasoning was required by the ALJ.

### a. Ability to Concentrate

The Commissioner argues this case is controlled by the Ninth Circuit's decision in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008). There, the Ninth Circuit held that the ALJ's RFC determination that "the claimant retains the residual functional capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public" adequately incorporated "deficiencies in concentration, persistence, or pace." *Id.* at 1173. In *Stubbs-Danielson,* the evaluating psychologist "diagnosed [plaintiff] with

11

borderline intellectual functioning and said she showed good persistence, but a slow pace in thought and action." *Id.* at 1171. Although the examining doctor did not assess whether that plaintiff could perform unskilled work on a sustained basis, the State agency reviewing psychologist's report "identified 'a slow pace, both in thinking & actions' and several moderate limitations in other mental areas, [and] ultimately concluded Stubbs-Danielson retained the ability to 'carry out simple tasks[.]'" *Id.* at 1173. The Ninth Circuit determined that the "ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—[the State agency reviewing psychologist's] recommended restriction to 'simple tasks.'" *Id.* at 1174.

  Here, Plaintiff's examining psychologist and both State agency reviewing psychologists determined that Plaintiff has moderate limitations regarding concentration and persistence. (AR at 95, 114, 351). The examining psychologist, Dr. Clark, supplied a brief statement which rated Plaintiff's limitations in six categories. (AR at 351). Without elaborating further, Dr. Clark opined, "Ability to concentrate for at least two-hour increments at a time, in order to maintain a regular work schedule: Limitations: Moderate based on exam." (*Id.*). The assessments of the reviewing psychologists provided greater detail regarding Plaintiff's capacity for sustained concentration and persistence. Both reviewing psychologists explained: "Claimant would be able to maintain attention and concentration for at least two hours at a time as required *to perform simple tasks,* sufficiently to complete an 8 hour day and a 40 hour week." (AR at 96, 115) (emphasis added). The ALJ explained that he "incorporated the opinions of both the consultative examiner and the State agency psychological consultants" in Plaintiff's RFC. (AR at 36).

  Regarding limitations with concentration, Plaintiff does not attempt to distinguish the Ninth Circuit's decision in *Stubbs-Danielson*. Like in *Stubbs-Danielson*, it appears the ALJ appropriately translated Plaintiff's limitations with concentration and pace into "the only concrete restrictions available to him – the restrictions articulated by the State agency psychological consultants. *Stubbs-Danielson*, 539 F.3d at 1174; *see also Knealy P. v. Kijakazi*, No. 20-cv-0984-AJB-BGS, 2022 U.S. Dist. LEXIS 33026, at *73 (S.D. Cal. Feb. 24, 2022) ("limiting Plaintiff to 'understand[ing], remember[ing], and carry[ing] out simple instructions and tasks' adequately captured Plaintiff's moderate limitations in concentration, persistence, and pace.").

  Nor does Plaintiff dispute the Commissioner's explanation that the ALJ's RFC for "unskilled tasks" is consistent with the State agency psychologists' opinions that Plaintiff is able to perform "simple tasks." (ECF No. 17 at 37 n.10). This can be a meaningful distinction. *See Kramer*, 2022 U.S. Dist. LEXIS 53738, at *41 n.16 ("'unskilled work' and 'simple, repetitive tasks' are terms of art and apply to different limitations . . . . not all unskilled jobs will necessarily be limited to the simplest level of work."). Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* at *37 n.14 (citing 20 C.F.R. §§ 404.1568(a); 416.968(a)). Here, because Dr. Clark opined that Plaintiff has no limitations in her ability to understand instructions, complete simple tasks, and complete complex tasks, the Court finds that substantial evidence supports the ALJ's restriction to unskilled work to the extent that it may be broader than "simple tasks." (*See* AR at 351).

  Accordingly, the Court **RECOMMENDS** the District Judge find that the ALJ did not reject Dr. Clark's opinion regarding Plaintiff's limitations in

concentration, persistence, or pace.

### b. Ability to Sustain an Ordinary Routine Without Sustained Supervision and Plaintiff's "Difficulty Attending Work"

Plaintiff's argument regarding the attendance limitations opined by Dr. Clark is better supported but does not persuade the Court that the ALJ reversibly erred here. As Plaintiff points out, courts have held that "[a]lthough the ALJ's RFC restriction for non-complex tasks may encompass the concentration, persistence, and pace limitations" it "does not sufficiently account for Plaintiff's moderate limitations in performing activities within a schedule, maintaining regular attendance in the workplace, or completing a normal workday and workweek without interruption." *Atkinson v. Colvin*, No. EDCV 14-02337 (GJS), 2015 U.S. Dist. LEXIS 136660 (C.D. Cal. Oct. 5, 2015) ("ALJ erred by failing to explain why he did not include in the RFC assessment [the consultative examining psychiatrist's] findings that Plaintiff has moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and complete a normal workday and workweek without interruption from psychologically-based symptoms" despite purportedly giving great weight to the opinion.).

Courts appear to routinely remand based on an ALJ's failure to address moderate, or even mild mental limitations. *See, e.g.*, *Patricia C. v. Saul*, No. 19-cv-00636-JM-JLB, 2020 U.S. Dist. LEXIS 144478, at *37-41 (S.D. Cal. Aug. 10, 2020) (collecting cases and holding, "[t]he Court will not infer in a vacuum that the ALJ considered Plaintiff's mild mental limitations but then validly concluded that they did not cause any significant limitation necessitating inclusion in the RFC."). This Court finds *Patricia C.* distinguishable because in that case, the ALJ's RFC assessment merely

14

incorporated the Step Two severity assessment with boilerplate language and failed to make the requisite "more detailed assessment" regarding Plaintiff's RFC. *Id.* at *40. Here, following the ALJ's RFC determination, he further discussed the opinions of Dr. Clark and the State agency psychological consultants regarding Plaintiff's mild to moderate mental limitations. (*See* AR at 35-36).

Plaintiff has not provided any binding authority to suggest that remand is required, and the Court is not persuaded that remand is warranted on the record here. Dr. Clark minimally expanded on her assessment that Plaintiff has moderate limitations in her ability to sustain an ordinary routine without sustained supervision by stating, "she would have difficulty attending work every day." (AR at 351). Dr. Clark did not indicate a reason for Plaintiff's "difficulty attending work every day" and the basis for Dr. Clark's conclusion is not apparent. The only portion of Dr. Clark's evaluation that seems to address attendance is Dr. Clark's notation that Plaintiff reports "her mother has to keep up with her appointments." (AR at 349). Dr. Clark does not indicate how frequently Plaintiff might miss work. (AR at 349-51).

Some ALJs have articulated reasons to reject similarly vague opinions in the context of attendance limitations. *See, e.g., Barrera v. Comm'r of Soc. Sec.*, No. 1:16-cv-01466-SAB, 2018 U.S. Dist. LEXIS 9128, at *42 (E.D. Cal. Jan. 19, 2018) (affirming where the basis for finding that plaintiff would have difficulty managing a full workday with the standard schedule of breaks was unclear, and the source does not explain how much of a problem Plaintiff would have managing a full workday.) However, failure to explicitly reject these types of opined limitations does not necessarily constitute error, as explained below.

The Commissioner argues that "'moderate' limitation, in the context of a mental RFC, means that the claimant's ability to function on a sustained basis in a particular area remains 'fair' or 'satisfactory.'" (ECF No. 17 at 35) (citing SSA Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66137, 66164 (Sep. 26, 2016); *Fergerson v. Berryhill*, No. 5:17-cv-00161-KES, 2017 U.S. Dist. LEXIS 182053, at *3 (C.D. Cal. Nov. 1, 2017)).

Plaintiff is quick to dismiss the Commissioner's response as a post hoc rationalization. (ECF No. 17 at 38-39). Ultimately, the question here is whether the ALJ was required to offer reasoning to reject this opined limitation. As the Commissioner's argument is pertinent to the threshold question of whether the ALJ rejected Dr. Clark's opinion (and not whether he had adequate reasons for doing so), the Court will not dismiss the Commissioner's argument as a post hoc rationalization.

Working on a "regular and continuing basis," which is the default position of any RFC, is not inconsistent with a "moderate" level of absenteeism, which is "more than slight, but the individual can still function satisfactorily." *Fergerson,* 2017 U.S. Dist. LEXIS 182053, at *9-11. *But see, e.g.*, *Shelyne H. v. Kijakazi,* No. CV 20-7334 MRW, 2022 U.S. Dist. LEXIS 5681, at *5 (C.D. Cal. Jan. 11, 2022) (finding the Commissioner's argument plausible that the ALJ reasonably interpreted the moderate mental limitations as not needing a specific limitation in the RFC, but remanding due to the lack of "a reviewable statement that provides visibility into the decision-making process"); *David L. v. Kijakazi*, No. EDCV 20-1869-KK, 2021 U.S. Dist. LEXIS 184751, at *16 (C.D. Cal. Sep. 27, 2021) ("[T]he ALJ was required to either include the limitations regarding attendance and the completion of a normal workday and workweek in Plaintiff's RFC assessment or provide legally sufficient reasons for rejecting them.").

Regarding moderate limitations in attendance and sustaining a routine without sustained supervision, courts in this district have found the ALJ did not err when they neither stated the limitations in the RFC nor specified their reasons for omitting them. "[A] fair reading" of a consultative psychological examiner's opinion that a plaintiff was moderately limited in his ability to maintain regular attendance is that "although Plaintiff has more than a slight limitation in workplace attendance, he can still function satisfactorily in that area." *McIntosh v. Colvin*, No. 16-cv-0963-JAH-BGS, 2018 U.S. Dist. LEXIS 30778, at *5, 21, 24 (S.D. Cal. Feb. 26, 2018) (ALJ afforded great weight to the consultative psychological examiner's opinion which included moderate limitations in the ability to maintain regular attendance and the court held the omission of this limitation "did not constitute a rejection."); *see also Rector v. Colvin*, No. 13-cv-00168-BEN (BGS), 2014 U.S. Dist. LEXIS 26146, at *17-19 (S.D. Cal. Feb. 26, 2014) ("The ALJ did not reject the 'moderate' limitations stated by [the examining psychologist]. Rather, he found Plaintiff able to perform some simple tasks despite these limitations.").

In particular, some courts decline to find error when ALJs omit discussion of similarly vague attendance limitations. For example, courts have declined to find error where the medical source does not provide specific restrictions regarding the number of days or percentage of time the claimant would be absent or off pace. *See Cecilia M. v. Kijakazi*, No. 5:20-cv-00092-PD, 2021 U.S. Dist. LEXIS 168123, at *10 (C.D. Cal. Sep. 3, 2021) (holding that "the ALJ was not obligated to include further limitations addressing Plaintiff's moderate limitations in completing a normal workday/workweek and performing job functions without special supervision where [the relied-upon medical opinions] did not articulate any specific restrictions.");

*Fergerson*, 2017 U.S. Dist. LEXIS 182053, at *11 ("an ALJ is not required to make up restrictions that are not actually articulated by any medical source or to give 'legitimate and specific reasons' for rejecting [attendance] restrictions never articulated.").

Beyond Dr. Clark's opinion, Plaintiff does not point to any evidence in the record supporting her limitations in sustaining an ordinary routine without sustained supervision, or with maintaining appropriate attendance. Plaintiff does not address the opinions of the State agency consultants which specifically opine that Plaintiff is "not significantly limited" in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" or her ability to "sustain an ordinary routine without special supervision." (AR at 96, 114). The State agency consultants' opinions support the ALJ's reasonable understanding that Dr. Clark used the regular SSA definition of "moderate" limitation in her opinions. *See Marissa M. S. v. Saul*, No. 5:20-cv-01221-AFM, 2021 U.S. Dist. LEXIS 113064, at *13 (C.D. Cal. June 16, 2021) ("There is no evidence in the record to suggest that Dr. Cross or any other treating, consulting, or reviewing source considered Plaintiff to be wholly unable to complete a workday or work week, particularly if she was limited to performing simple and routine tasks at a non-production rate pace.").

Courts "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (citation omitted). While another rational interpretation of Dr. Clark's opinion is possible, because the ALJ appears to have reasonably interpreted that the moderate limitations opined by Dr. Clark do not prevent Plaintiff from working on a regular and continuing basis under the conditions set forth in her RFC, the ALJ's decision must be upheld.

*See Fergerson*, 2017 U.S. Dist. LEXIS 182053, at *11.  Accordingly, the Court **RECOMMENDS** that the District Court find that the ALJ did not reject Dr. Clark's opinion regarding Plaintiff's moderate limitations in attending work or sustaining an ordinary routine without sustained supervision.

## III.  CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court resolve the Joint Motion in favor of the Commissioner.  This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the Court and served on all parties no later than **August 26, 2022**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 2, 2022**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:   August 12, 2022

Hon. Mitchell D. Dembin
United States Magistrate Judge